**In re UNITED STATES MACHINE TOOLS, INC.**

**SEABERG PRECISION REBUILDING CORP., Appellant-Defendant,**

**v.**

**UNITED STATES MACHINE TOOLS, INC., Appellee-Plaintiff.**

Bankruptcy No. 2–82–00104.
Adv. No. 2–82–0682.
Civ. No. H–83–426.

United States District Court,
D. Connecticut.

Oct. 13, 1983.

Alan Kardon, Paula Yellman, Rosenberg, Bernett, Sattin & Kardon, Hartford, Conn., for appellee-plaintiff U.S. Machine Tools, Inc.

Jonathan V. Pollock, Heiko, Bush & Barbaccia, Garden City, N.Y., for appellant-defendant Seaberg Precision.

## MEMORANDUM OF DECISION

BLUMENFELD, Senior District Judge.

### I. *Facts of the Case*

The facts of this case are not in dispute and are adopted from the Bankruptcy Judge's opinion.

United States Machine Tools, Inc. (USMT), as plaintiff and debtor-in-possession, filed a complaint to recover $14,050.00 from Seaberg Precision Rebuilding Corp. (Seaberg). Seaberg, a company located in West Babylon, New York, had received these monies post-petition from the plaintiff under the following circumstances. When the plaintiff filed its chapter 11 petition on February 5, 1982, it owed Seaberg $14,050.00 based upon invoices for labor and services rendered by Seaberg in May and June, 1981. By agreement between an officer of the plaintiff and an officer of Seaberg, the plaintiff issued spurious post-petition work orders to Seaberg amounting to $14,050.00. Seaberg responded with equally spurious postpetition invoices for $14,050.00 which the plaintiff then paid. Seaberg admittedly performed no postpetition work for the plaintiff, and the payment of the false invoices was meant to mask the satisfaction of the prepetition indebtedness.

In a cursory opinion, the Bankruptcy Judge found for the plaintiff.

### II. *The Transaction Violated Section 549*

A. *The court did not give authorization for the transfer.*

The first question is whether the transaction is avoidable under 11 U.S.C. § 549(a). That section provides:

(a) Except as provided in subsection (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

■ A walk through section 549(a) shows that the transaction in the instant case is not excepted from those which the trustee may avoid. Subsection (b) of section 549 deals with involuntary cases. Here, the bankruptcy petition was filed by the debtor. Subsection (c) applies to good faith purchasers without knowledge of the commencement of the case. Seaberg, of course, was not a purchaser in the transaction, and clearly had knowledge of USMT's bankruptcy.

The transaction occurred in early April 1982—after the February 15, 1982 filing of the Chapter 11 petition; subsection (a)(1) is thus satisfied. The remaining inquiry, therefore, is whether the transaction is authorized by either the Code or by the court.

Neither party made any attempt to obtain court authorization for the transaction. Appellant acknowledges that the proper procedure was not followed;[1] it seeks, however, to prevent avoidance of the transfer by laying full blame on appellee. Seaberg argues that if a proper application for permission to exchange payment for discharge of a possessory lien had been made,

---

1. Appellant argued before the magistrate:
   if things were done correctly and [USMT] had applied to this Court for an order directing us to turn over the equipment to begin with,

   instead of tendering payment, we probably would have appeared and put in the answer that we had a continuing possessory lien. Transcript at 27.

the court both would have the power to issue such an order and continues to have the power to ratify the act by issuing an order *nunc pro tunc.* Although correct as a description of the court's powers, appellant's assertion ignores the fact that it failed to either seek the proper order, or to insist that appellee seek such an order. Instead, both parties worked together to circumvent the proper procedure by issuing spurious postpetition work orders and invoices.

Seaberg contends that the debtor typically is responsible for giving notice of a proposed use of the estate's funds.[2] It argues that the court should not allow USMT to benefit from the disregard of the proper procedural edicts of the Bankruptcy Code. Such an argument does not allow a creditor to forestall the application of section 549. Seaberg was a willing participant in the decision to transfer the property without court authorization. Moreover, Seaberg could not avoid application of section 549 even if it were entirely innocent. As the Fourth Circuit pointed out in applying the predecessor of section 549:

It is obvious that the intent of this enactment is to invalidate transactions not granted specific protection under the Act and thus put to an end the confusion theretofore existing in the decisions. There is almost always some injustice or hardship which attends transactions occurring after the filing of a petition in bankruptcy between the bankrupt, acting wrongfully, and an innocent third person, because the loss must fall either upon the third person or upon the creditors of the bankrupt. Whether the line which has been drawn is the best possible solution of the problem is not for the courts to say. The line has in fact been drawn by competent authority and it is no longer necessary for the courts to make the attempt, which has not been conspicuous-

ly successful in the past, to decide cases on the facts as they arise and to draw a fine distinction between transactions which should be protected and those which should not.

*Lake v. New York Life Insurance Co.,* 218 F.2d 394, 399 (4th Cir.1955) (applying section 70 of the former Act). *In re Black,* 19 B.R. 468, 472 (Bkrtcy.M.D.Tenn.1982) (applying *Lake* to section 549).

The Code, through section 549, seeks to preserve the bankrupt's estate even if such preservation is at the expense of some transferees:

[T]he typical transferee of personalty ... will not be protected under section 549. This is true with respect to [the] vulnerability [of] all transferees of personalty under section 549 and reflects a harsh line drawn by the Code between transferees of real and personal property. The only remedy of a transference of personal property in the vast majority of cases will be a general unsecured claim against the estate under section 502(h).

4 *Collier on Bankruptcy* ¶ 549.03[1] at 549–8 to 549–9 (15th ed. 1981).

Thus the words of a leading commentator, in describing section 549's predecessor are still sound: "Subject to the exceptions thus created [by section 70(d)] ... the bankruptcy petition is still a *caveat* and persons dealing with the bankrupt thereafter do so at their peril." 4B *Collier on Bankruptcy* ¶ 70.67[1] at 743 (14th ed. 1978); *In re P & Z Island Farms, Inc.,* 478 F.Supp. 529, 533 (S.D.N.Y.1979).

B. *The transaction was not authorized by any other section of the Code.*

█ Even though the court did not authorize the transaction, section 549(a)(2)(B) might nonetheless be satisfied if some other code section provided for the transfer. Appellant argues that the transaction falls

---

**2.** *See* 2 *Collier on Bankruptcy* ¶ 363.03 at 363–16 (15th ed. 1981):

A court order is not required. The trustee is required to give notice of any proposed use, sale, or lease to provide an opportunity for objections and a hearing if there are objections. This is because Section 102(1) provides

that "notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances" but authorizes the act without an actual hearing if one is not timely requested or there is insufficient time for a hearing.

under section 363(c)(1) which allows a debtor who is authorized to operate its business to use property of the estate in the ordinary course of business. I disagree.

Appellee, USMT, is in the business of remanufacturing metal cutting machine tools. In the ordinary course of its business, it sometimes sends parts of machine tools to independent machine shops for special work. Appellee's Complaint ¶ 5. Under normal circumstances, therefore, appellee's payment to appellant would be considered to be made in the ordinary course of business. Appellant cannot make that claim here because such a payment would be for a debt incurred prior to the filing of the bankruptcy petition. Appellant does claim, however, that the exchange of the estate's funds to satisfy an artisan's possessory lien constitutes the use of property in the ordinary course of business. This would only be so, however, if USMT was in the business of satisfying liens instead of remanufacturing machine tools. Thus, when appellant argues that such an ordinary, everyday payment is not rendered outside the ordinary course of business merely because a possessory lien is being satisfied (Appellant's Reply Memorandum at 2–3), it is ignoring the fact that USMT's payment could not be made for Seaberg's ordinary machinists' services, but only for the extinguishment of the lien. The transaction, therefore, violates section 549.[3]

### III. *Appellant is Liable Under Section 550*

Section 550 provides that to the extent a transfer is avoided under section 549, the trustee may recover for the benefit of the estate the property transferred. It is therefore ordered that appellee USMT recover from the appellant Seaberg, the sum of $14,050.00, together with interest at 8.98% and costs of this action.

**3.** It may be noted that the transaction is violative of the spirit, though perhaps not the technical language of the automatic stay provision. Title 11, U.S.C. § 362(a)(4) stays all acts to "create, perfect or enforce any lien." Appellant argues that it took no steps to enforce the lien, and thus remained within the strictures of section 362(a)(4). Any enforcement and satisfaction out of the collateral itself, through resale or

The order of the Bankruptcy Court is affirmed.

SO ORDERED.

possession, would have been subject to a determination of the Bankruptcy Court of the secured status of the creditor, the amount of the debt and the valuation of the collateral. The ensuing transaction, however, provided for Seaberg the equivalent of enforcement of the lien. In electing this shortcut, Seaberg circumvented the Code's otherwise orderly way of disposing of competing creditor claims.