In re BERKLEY MULTI–UNITS,
INC., Debtor.

Joseph A. GASSEN, Trustee, Plaintiff,

v.

UNIVERSAL BUILDING MATERIALS,
INC., Defendant.

Bankruptcy No. 85–433–BKC–8P1.
Adv. No. 86–190.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 29, 1988.

See also, Bkrtcy., 91 B.R. 150.

Robert Venney, Miami, Fla., Jeffrey Warren, Tampa, Fla., for plaintiff.

Russell S. Bogue, III, Tampa, Fla., for defendant.

## ORDER ON RENEWED CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR REVISION OF INTERLOCUTORY ORDER

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matters under consideration are renewed cross motions for summary judgment. The motions are filed by successor Trustees Robert Venney and Jeffrey Warren, who replaced Joseph Gassen, the Trustee originally appointed in this Chapter 11 case. The cross motion is filed by Universal Building Materials, Inc (UBM). It is the contention of both the Trustees and UBM that there are no genuine issues of material facts and that this dispute may be decided as a matter of law. The Court has considered the Motions, together with the record and argument of counsel, and finds the facts relevant and germane to a resolution of this proceeding to be as follows:

This adversary proceeding was commenced by a complaint filed on April 28, 1986, in which the original Trustee and now the successor Trustees seek to avoid a post-petition transfer, to-wit, a payment of $300,000.00 by Berkley Multi-units, Inc. (Debtor) to UBM. The claim asserted by the Trustees is based on § 549 of the Bankruptcy Code which, under certain conditions, empowers the Trustee to avoid post-petition transfers of properties of the estate. The facts relevant to the resolution of this claim are without dispute and appear from the record as follows: The payment under consideration to UBM was made pursuant to a contract for the purchase of an apartment-house complex known as Sea Bonae Apartments, which contract was entered into by the Debtor as purchaser and UBM as seller on January 22, 1985. Pursuant to the contract to purchase on January 28, 1985, the Debtor deposited in escrow which at that time was held by the Title Company, the sum of $109,105.60 as the initial installment payment toward the ultimate down payment on the transaction plus some closing expenses and expenses of title insurance. A closing was delayed due to certain problems in obtaining title insurance, and the parties orally agreed to modify the escrow arrangement by transferring the amounts held in escrow from the Title Company to Mr. Dale, the attorney for UBM, who undertook the task to clear up the title problem. As the result of additional payment by the Debtor, by February 18, 1985, the funds in escrow totalled $331,255.59.

During this same time period, UBM executed and delivered a deed to Dale to be held by him in escrow and also executed a Mortgage and Security Agreement on the property, signed by the Debtor as Grantor to be delivered at the closing of the trans-

action. Notwithstanding the fact that no closing actually occurred at the time contemplated, the Debtor took possession of the Sea Bonae on February 18, 1985, and assumed the operation of the facility. Seven days later the Debtor filed its Chapter 11 Petition. On March 29, 1985, Dale recorded the deed and the Mortgage and the Security Agreement. In early April, 1985, Dale disbursed approximately $300,000.00 from the escrow account to UBM. It is this disbursement which the Trustee seeks to avoid as a post-petition transfer pursuant to § 549 of the Bankruptcy Code.

It is important to note at the outset that at the time Dale recorded the deed and mortgage, no notice of the Debtor's bankruptcy filing was placed on the Public Records of Broward County, the County where the Sea Bonae was located. It is also without dispute that the Debtor was in possession of the Sea Bonae for a total of five months until this Court granted the motion filed by UBM to lift the automatic stay and authorized UBM to commence an action to foreclose the Debtor's interest in the Sea Bonae. The foreclosure was ultimately concluded and by entry of a Final Judgment, the Sea Bonae was sold on the foreclosure sale on January 22, 1987.

On January 30, 1987, this Court entered an Order on Motions for Summary Judgment filed by both the Trustees and UBM, treated the Motions as Partial Motions for Summary Judgment. The Order held first, that the funds involved in this controversy were properties of the estate on the date of the commencement of the case; second, that the transfer of the funds occurred post-petition; third, that the transfer was not a transaction authorized by this Court or made in the ordinary course of business; and fourth, that UMB had actual knowledge of the Debtor's Chapter 11 filing at the time of the transfer. Based on these findings, this Court concluded that the Trustee was entitled to avoid the post-petition transfer. The record reveals, however, that the Court did not address certain issues raised by the UBM in its counterclaim and its affirmative defenses, which will now be considered and which are the following:

1. Whether the purchase by the Debtor of the Sea Bonae was in the Debtor's ordinary course of business, and thus was authorized by this Court in the Debtor-in-Possession Order entered by this Court at the commencement of this case?

2. Whether the Trustee is precluded from avoiding the transfer pursuant to § 549(c) of the Bankruptcy Code if UBM had no knowledge of the Bankruptcy Petition and the transfer was made by UBM in good faith and for fair and equivalent value?

3. Whether the Trustee ratified and is estopped from avoiding the transfer as the Debtor assumed possession of the Sea Bonae and thus ratified its purchase of the Sea Bonae and the accompanying escrow agreement?

4. Whether UBM is entitled to offsets for the Debtor's use of the property and other offsets totalling $276,000.00 as set forth in a final summary judgment of foreclosure of a mortgage entered in the Circuit Court for Broward County, Florida?

It further appears that subsequent to this Court's Order on Motions for Summary Judgment, UBM filed a Motion seeking a revision of that Order, urging that the sale of the Sea Bonae was in the Debtor's ordinary course of business and that at the time of the transfer to UBM, it had no knowledge of the Debtor's Chapter 11 filing. This Motion will also be considered at this juncture.

■ It is the contention of UBM that the purchase by the Debtor of the Sea Bonae was in the ordinary course of the Debtor's business, and thus was a transaction sanctioned by § 363(c)(1) of the Bankruptcy Code. Although the term "ordinary course of business" is generally to be broadly interpreted, *In re Bagwell*, 29 B.R. 461 (Bkr.D.Oregon 1983), this Court is satisfied that the Debtor was not in the business of purchasing and selling apartment buildings. This Court is satisfied that the transfer of $300,000.00 post-petition by the Debtor was not the type of transaction described by § 363(c)(1) and within the authority granted to the Debtors by the Debt-

or-in-Possession Order which authorized the Debtor to operate its business as Debtor-in-Possession.

This conclusion is inevitable when considering the purpose of the "ordinary course of business" exception which is to allow a business to continue its daily operations without incurring the burden of obtaining court approval or notifying creditors for minor transactions, while at the same time protecting secured creditors and others from the dissipation of the estate's assets. *In re Selgar Realty Corp.*, 85 B.R. 235, 17 BCD 638 (Bkr.E.D.N.Y.1988) The purchase of the Sea Bonae was in no way a minor everyday transaction for the Debtor. While it is true that the Debtor engaged in several transactions in which it acquired apartment buildings and hotels for the purpose of holding and managing these complexes, these transactions are not within the contemplation of the term "ordinary course of business." This is especially true in light of the fact that this particular Debtor in its activities was involved in a Ponzi scheme whereby its affiliate State Capital solicited investments from the public and then funnelled the funds collected into several subsidiaries, which funds were used then in turn to purchase properties, among others the property involved in this present controversy. To secure these investments, the several subsidiaries of State Capital granted usually a second mortgage on a property purchased to several hundred people collectively who are referred to as Equal Dignity Mortgage Holders. This scheme operated at full blast until the State of Florida obtained an injunction and prohibited State Capital to solicit any additional funds which in turn, of course, brought to a sudden halt the entire operation because the funds collected from the new investors were used to pay the extremely high interest rate promised to the previous investors and when the source of money dried out, the interest payment to creditors ceased.

The concept of "ordinary course of business" was considered by the Ninth Circuit, although in a different context in the case of *Bullion Reserve of North America*, 836 F.2d 1214 (1988), where the Court concluded that the ordinary course of business exception in the context of an action to recover a preference involving transfers made in a fraudulent business was not the type of transaction which Congress contemplated, and it was intended only to apply to transfers by legitimate business enterprises. See also, *In re Graulty v. Brooks (Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.,* 819 F.2d 214 (9th Cir.1987)). Moreover, it is important to note that on the date of the commencement of the case this was an executory contract, and the fact that it was assumed by the Debtor and ultimately consummated, provides no support for UBM's position that no court approval was ever required for the assumption of the executory contract. See § 365(b)

■ Having determined that the transaction under consideration required court approval and was not authorized by this Court, the Trustee is not barred from avoiding the transfer unless § 549(c) of the Bankruptcy Code applies. This Code Section provides as follows:

§ 549. Postpetition transactions

(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected. Clearly, the literal language of this section affords protection only to an innocent purchaser of property from the Debtor and not

to an innocent seller. Therefore, UBM may not use § 549(c) as a defense, regardless of its lack of knowledge or good faith.

 Next, one must resolve the question whether the Trustee essentially ratified the purchase by assuming possession of the Sea Bonae and is thus estopped from avoiding the transfer pursuant to § 549(a) of the Bankruptcy Code which reads as follows:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2) (A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

It is undisputed that the Debtor and Trustee assumed possession of the Sea Bonae and retained all rents and profits derived from its operation. However, there appears to be no basis for applying the principles of estoppel or other equitable principles to prevent the Trustee's exercise of the avoidance powers under § 549(a) of the Bankruptcy Code. *In re U.S. Machine Tools, Inc.*, 38 B.R. 984 (D.Conn.1983) *In the Matter of B & W Enterprise, Inc.*, 713 F.2d 534 (9th Cir.1983) Clearly, if the Trustee could not avoid post-petition transfers to which the Debtor-in-Possession consented, then § 549(a) would be rendered virtually meaningless. Further, there is no question that post-petition transfers must be authorized by the Court regardless of the Debtor's actions, and there was no such authorization in this case.

 UBM's final affirmative defense seeks an offset of expenses it incurred by it while the Debtor was in possession of the Sea Bonae. These expenses, with the exception of the "lost monthly rental payments," are set forth in the Final Summary Judgment of Foreclosure of Mortgage entered by Broward County Circuit Court on January 22, 1986, and are as follows:

| | |
|---|---|
| Unpaid interest on the mortgage note from February 18, 1985—January 21, 1986 at default rate of 18% (economic use of the property) | $216,049.31 |
| Liability and casualty insurance | $18,712.29 |
| Personal property lease payments | 5,503.30 |
| 1985 real estate taxes | 14,959.73 |
| Lost or damaged furniture & fixtures | 16,074.62 |
| Lost monthly rental payments | 30,000.00 |
| per month | [35,000.00] |
| | $301,299.25 |

It is contended by UBM that it is entitled to at least the reasonable rental value of the premises for the post-petition Chapter 11 period of occupancy by the Debtor-in-Possesion, relying on *In re Silver Wheel Freightlines, Inc.*, 64 B.R. 563 (Bkr.D.Oregon 1986) and *In re Fredrick Meats, Inc.*, 483 F.2d 951 (9th Cir.1973) and that pursuant to § 553 of the Bankruptcy Code, it should be entitled to set off these other amounts expended. In opposition the Trustee contends that § 553 only applies to mutual pre-petition debts and, therefore, provides no support for the claim of set-off by UBM. In any event, the Trustee contends that pursuant to the Purchase and Sale Contract, UBM's damages, if allowed at all, must be subject to the $50,000.00 limit set forth in the contract.

 This last contention is without merit as there is no question that both parties performed under the contract and the damages provision in the contract was clearly to remedy any breach of the Purchase and Sale contract. Nevertheless, it is without dispute that the Debtor was in possession of the Sea Bonae and enjoyed the benefit of the Sea Bonae for approximately five months, and this Court is satisfied that UBM should be compensated for the actual expenses it had to incur, expenses which should have been paid by the Debtor. Accordingly, UBM is entitled to an offset of the payment for insurance premiums, lease payments on equipment and for taxes totalling $39,175.32 paid on behalf of the Debtor. There is nothing in this record on the reasonable value of the use and occupancy of the premises, therefore, the same cannot be recognized as an offset. The remainder of items claimed by UBM are inappropriate for equitable set-off.

Finally, addressing UBM's counterclaims which seek attorney fees and a judgment against the Debtor (sic) in the amount of

$276,800.77, the deficiency claim, this Court is satisfied that both counterclaims are without merit, and should be denied with the proviso that the amount of deficiency should be allowed as a general unsecured claim.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Renewed Motion for Summary Judgment be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that UBM's Renewed Motion for Summary Judgment be, and the same is hereby, granted in part and denied in part. It is further

ORDERED, ADJUDGED AND DECREED that UBM's Motion for Revision of Interlocutory Order be, and the same is hereby, denied.

A separate Final Judgment will be entered in accordance with the foregoing.