### In re DOLA INTERNATIONAL CORP. and Northwest Automatic Products, Inc., Debtors.

### DOLA INTERNATIONAL CORP. and Northwest Automatic Products, Inc., Plaintiffs,

### v.

### Donald A. BORDLEMAY; Lawrence W. Tuller; Tuller & Co., Inc.; and Barros, Inc., Defendants.

Bankruptcy Nos. 4–86–2365, 4–86–2366. Adv. No. 4–87–44.

United States Bankruptcy Court, D. Minnesota.

July 25, 1988.

---

Ann Morelli Spencer, Minneapolis, Minn., for plaintiffs/debtors.

Edward F. Fox, Minneapolis, Minn., for defendants.

## MEMORANDUM ORDER

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on April 21, 1988, on plaintiffs' motion for partial summary judgment as to counts one, four and five of the complaint. Ann Morelli Spencer appeared on behalf of plaintiffs, Northwest Automatic Products, Inc. ("Northwest") and its parent corporation, DOLA International Corp. ("DOLA"); Edward F. Fox appeared on behalf of defendants, Donald A. Bordlemay ("Bordlemay"), Lawrence W. Tuller ("Tuller"), Tuller & Co., Inc. ("Tuller & Co.") and Barros, Inc. ("Barros"). This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(E), (F) and (H). Based upon the arguments of counsel and all the files, records and proceedings herein, the court makes the following Memorandum Order which will serve as its Findings of Fact, Conclusions of Law and Order for Partial Summary Judgment.

## FACTS

### A. The Parties

Northwest is a Delaware corporation based in Minneapolis and engaged in the screw machine manufacturing business. Northwest has been in business in this area for many years. Until recently, Northwest benefitted from sustained and stable ownership. However, in recent years, it had several owners, including defendants Bordlemay and Tuller, through their ownership in DOLA.

DOLA is a Delaware corporation with its principal office and place of business in Minneapolis, Minnesota. DOLA is a holding company that was formed on March 18, 1983, by Tuller and Bordlemay for the express purpose of purchasing businesses. Consistent with that purpose, in November 1983 DOLA acquired all of the stock of Northwest and in 1984 DOLA also purchased a separate operating company, Acrotech Machine Co.

Northwest and DOLA both filed petitions for relief under Chapter 11 of the Bankruptcy Code on May 1, 1986. This court recently confirmed their plan of reorganization.

Bordlemay is a resident of the state of Florida, and Tuller is a resident of the state of Pennsylvania. Bordlemay and Tuller owned all of the stock of DOLA until June 13, 1986, when they sold their interests in the company to the current owners in a leveraged buyout. Between 1983 and June 13, 1986, both Bordlemay and Tuller were also officers and directors of DOLA and

Northwest. Tuller & Co. was formed by Tuller, defendants assert, as a management consulting firm specializing in troubled companies. It, too, was based in Pennsylvania. Barros is a Delaware corporation also based in Pennsylvania. Tuller & Bordlemay were shareholders, officers and directors in Barros.

## B. Claims as Reflected by the Pleadings

DOLA and Northwest commenced this adversary proceeding on March 11, 1987. The complaint is framed in five counts, all of which are based on the undisputed fact that in the one year immediately preceding May 1, 1986, Northwest and/or DOLA paid defendants, or some of them, the total sum of $326,800.00 pursuant to certain management consulting contracts entered into between some of the parties. Plaintiffs also assert that defendants, or some of them, received $49,279.81 in the six weeks immediately following the filing by DOLA and Northwest of their petitions for relief in bankruptcy, all in continuing payments for management consulting services under a management consulting agreement which was never approved by the court. Plaintiffs contend that defendants are insiders under 11 U.S.C. § 101(30), and that the prepetition payments constitute a preference under 11 U.S.C. § 547(b) (count one), a fraudulent conveyance under 11 U.S.C. § 548(a) (count two), and/or are avoidable under 11 U.S.C. § 544(b) (count three). Counts four and five deal exclusively with postpetition payments which Northwest and DOLA assert should be returned under 11 U.S.C. § 549(a) because they were unauthorized postpetition payments (count four) which had not been authorized pursuant to 11 U.S.C. § 327, 330 and 331 (count five). Based on the foregoing, plaintiffs seek to have defendants, or some of them, return both the prepetition and postpetition payments pursuant to 11 U.S.C. § 550.

## C. Transactions Giving Rise to This Claim

In 1984 and 1985, DOLA entered into several agreements for management services with Tuller & Co. and with Bordle-may, pursuant to which DOLA engaged them to "perform management services for DOLA and its subsidiaries" at a billing rate of $250.00 per hour with no minimum or maximum time required to be devoted to the task. The agreement acknowledged that "because of the current financial condition of DOLA" the consultants agree to cap the fees for their services. The types of management services were clearly spelled out in the 1984 and 1985 agreements.

Under date December 31, 1985, the parties wrote a new "Agreement for Management Services" ("the 1986 Agreement") This agreement was solely between DOLA and Barros. Therein DOLA agreed to engage Barros to perform management services for DOLA and its subsidiaries for the year 1986. Again the billing rate was $250.00 per hour with no minimum or maximum amount of time required to be spent. "Because of the current financial condition of DOLA", Barros agreed to bill at the rate of $190.00 per hour until such time as DOLA was financially able to pay a greater rate of $250.00 per hour. The 1986 Agreement specifically spelled out that:

These Management Services will relate to policy and procedural activities relating to Operating and Corporate matters and will include such areas as Organization, Marketing, Financial, Manufacturing and Personnel. BARROS will provide such services as are required by DOLA to maximize the profitability and the efficient operations of DOLA, NORTHWEST AUTOMATIC PRODUCTS, INC., and ACROTECH MACHINE CO. and will involve performing management activities for which neither of these companies have qualified personnel (i.e., Organization Planning, Marketing Strategies, Banking Relations, Tax Planning, Coordinations of Annual Audit, Acquisition/Divestiture activities, Personnel Recruiting, Financial Planning, Legal Relations, Labor Relations, etc.) as well as assisting local Operating Management in their day to day activities.

The agreement was signed by Tuller as President of DOLA and Bordlemay as its Chairman and, with respect to Barros, by Bordlemay as Chairman and Tuller as President.

Plaintiffs' verified memorandum of law in support of its motion for partial summary judgment establishes the following:

In the first week of February, March, April and May of 1986, Barros issued invoices to DOLA which covered services performed pursuant to the 1986 Agreement. The invoices covered services performed beginning in January, 1986 and ending April 30, 1986. The billings for this period of time exceeded $200,000.00 for a claimed nearly 600 hours of work. In addition, the invoices reflected that "DOLA/Northwest" had directly paid expenses that DOLA incurred in connection with rendering such services for items such as "T and L, insurance, rent and other expenses" which approximated $56,000.00.

In April, 1986, DOLA issued the following checks to the following persons:

| Date | Check No. | Payee | Amount | Purpose |
|---|---|---|---|---|
| 4/1/86 | 2149 | D.A. Bordlemay | $8,000.00 | "Fees" |
| 4/1/86 | 2150 | L.W. Tuller | $8,000.00 | "Fees" |
| 4/7/86 | 2168 | D.A. Bordlemay | $55,000.00 | "Consulting Fees" |
| 4/7/86 | 2169 | Tuller & Co. | $55,000.00 | "Consulting Fees" |
| 4/17/86 | 2188 | Barros, Ltd. | $20,000.00 | None specified |
| 4/26/86 | 2189 | Barros, Ltd. | $70,000.00 | None specified |
| | | TOTAL | $216,000.00 | |

A monthly statement from Barros to DOLA dated April 30, 1986 reflects payments received and credited against the monthly invoices for management consulting fees as follows:

| | |
|---|---|
| January | $16,000.00 |
| January | $26,703.13 |
| February | $56,416.24 |
| March | $26,880.63 |
| March | $20,000.00 |
| March | $7,418.38 |
| April | $62,581.62 |
| TOTAL | $216,000.00 |

During the month of May, in spite of the fact that petitions in bankruptcy had been filed on May 1, 1986, Barros continued to bill DOLA for management consulting ser-

vices under the 1986 Agreement. The first invoice was dated May 15, 1986 "for professional management services rendered during the period May 1–May 15, 1986". That invoice was in the total sum of $27,000.00, minus $946.91 for prepaid "T and L expenses paid by DOLA". This left a remaining balance of $26,053.09. The second invoice was dated May 31, 1986 and was again "for professional management services rendered during the period May 16 to May 31, 1986" in the sum of $34,500.00 minus $188.68 for prepaid "expenses paid direct to Barros" leaving a balance due of $34,311.32. The itemization on each of these invoices reflected that DOLA was definitely billing for management consulting services as follows:

Meetings with union re: proposals. Coordination with banking and legal re: bankruptcy actions. Determine organization reductions. Review production plan for May. Meet with vendor representatives. Meetings with Glenfed. Meetings with bankruptcy counsel. Begin to prepare court reports.

and

Meetings with Glenfed and Allen/Hoefelder. Meetings with informal vendor committee re: bankruptcy. Cash management. Develop plan for shutdown. Preparation of court reports. Coordination with banking and legal re: bankruptcy actions.

DOLA issued the following checks after May 1, 1986:

| Date | Check No. | Payee | Amount | Purpose |
|---|---|---|---|---|
| 5/15/86 | 2220 | Barros Ltd. | $6,886.77 | None specified |
| 5/15/86 | 2223 | Barros Ltd. | $792.81 | Office Rent |
| 5/15/86 | 2225 | Barros Ltd. | $15,000.00 | Consultant Management Fees |
| | | | $22,679.58 | |

Northwest also issued a check as follows:

| Date | Check No. | Payee | Amount | Purpose |
|---|---|---|---|---|
| 5/30/86 | 24750 | DOLA Int'l. Corp. | $18,841.67 | Advance on May DOLA expenses |
| | | | $41,521.25 | |

Following issuance of the checks by DOLA and Northwest referenced above, Barros issued a monthly statement dated

June 13, 1986 to DOLA in which it credited DOLA with the following payments made against its charges for management consulting fees:

| | |
|---|---|
| May | $15,000.00 |
| May | $6,886.77 |
| May | $792.81 |
| May | $15,000.00 |
| May | $3,841.67 |
| May | $7,758.56 |
| TOTAL | $49,279.81 |

## DISCUSSION

DOLA and Northwest assert that summary judgment should be granted on count one in their favor with respect to the $216,-000.00 in payments DOLA made on the 1986 Agreement in April of 1986. They assert that with respect to these payments, no genuine issues of material fact exist to rebut the claim that all elements of a preference action under 11 U.S.C. § 547(b) have been established. They also assert that, under counts four and five, DOLA, and Northwest (to the extent it made a payment) are entitled to recover the $49,279.81 in payments made to Barros between May 1, 1986, and June 13, 1986, which Barros applied against billings for services rendered in the month of May, 1986. They rest this claim on their assertion that no approval of the 1986 Agreement was obtained under 11 U.S.C. § 327 and accordingly these payments are, as a matter of law, unauthorized postpetition transfers under 11 U.S.C. § 549, subject to return under 11 U.S.C. § 550. For the reasons set forth below, I am denying plaintiffs' motion for summary judgment with respect to the prepetition preferential transfer claim (count one) and granting plaintiffs summary judgment with regard to counts four and five based on the postpetition payments.

The requisites of summary judgment are so well known as not to need repeating. Suffice it to say that the question before me is whether there is a genuine issue of material fact and that, in ruling on this motion, I am drawing all reasonable inferences in favor of defendants.

### A. Postpetition Payments

Section 327(a) of Title 11 states as follows:

Except as otherwise provided in this section, the trustee, *with the court's approval,* may employ one or more attorneys, accountants, appraisers, auctioneers or other *professional persons* that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added). Sections 330 and 331 of the Bankruptcy Code further provide for the mechanism for compensation of "professional persons" as that term is used in section 327. Once a court has approved the initial employment, professionals may not be compensated unless they have first made application to the court for compensation or interim compensation and notice has been provided to creditors.

The consequences to a "professional person" who renders services to a debtor without such prior court approval is denial of compensation:

When there is no compliance with the Code or Rules, a professional may forfeit his right to compensation. The services for which compensation is requested should have been performed pursuant to appropriate authority under the Code and in accordance with an order of the court.

2 *Collier on Bankruptcy,* ¶ 327.02 (L. King 15th ed. 1988). *See In re Carolina Sales Corp.,* 45 B.R. 750, 753 (Bktcy.E.D.N.C. 1985); *In re WFDR, Inc.,* 22 B.R. 266, 266 (Bktcy.N.D.Ga.1982); *In re Mork,* 19 B.R. 947, 948–49 (Bktcy.D.Minn.1982).

The Code provides no definition of "professional persons", but the term has regularly been accepted to mean persons who play a central role in the administration of the debtor proceeding. *See In re Seatrain Lines, Inc.,* 13 B.R. 980, 981 (Bktcy.S.D.N.Y.1981). Management consultants are "professional persons" within the meaning of 11 U.S.C. § 327. *Carolina Sales,* 45 B.R. at 752; *WFDR,* 22 B.R. at 266. Because the Code allows a debtor in possession to conduct its business in the ordinary course, even after the filing of a petition in

bankruptcy, however, a debtor in possession is not required to seek court approval for continuing the services of its salaried officers following the filing of the petition. *In re Lyon & Reboli, Inc.*, 24 B.R. 152, 154 (Bktcy.E.D.N.Y.1982). Moreover, section 327 contains a specific exception for salaried professionals (such as attorneys, accountants and other professional persons) "regularly employed ... on salary" at the commencement of the proceedings. 11 U.S.C. § 327(b).

▪ Plaintiffs have made an overwhelming record to establish that the $49,279.81 in postpetition payments made by DOLA (and in one case by Northwest) to Barros following the filing of the petition for relief by Northwest and DOLA were made for purposes of paying Barros the management consulting fees it claimed to be due from and after May 1, 1986 and that the payments were accepted and credited by Barros as such. It is undisputed that no prior approval of the retention of Barros by Northwest or DOLA was obtained.

Defendants argue that a genuine issue of material fact exists as to whether the services rendered by Barros come within the statutory exception provided in 11 U.S.C. § 327(b). They also assert that because Bordlemay and Tuller were officers of DOLA, Barros is somehow shielded from its obligation to obtain court approval for management consulting services provided to the debtor after the date of the filing of the petition.

While attacking plaintiffs for failing to provide verification of the records submitted in support of the motion (an unjustified attack since plaintiffs' memorandum is verified), defendants themselves have submitted no affidavits in support of their contention that the payments made by DOLA and Northwest following May 1, 1986 were, in fact, payments made for salary to Bordlemay and Tuller as officers of the corporation. The documentation which is part of this record establishes without a doubt that they were not. Nor do defendants provide any factual support for an argument that Barros somehow comes

within the exception provided by 11 U.S.C. § 327(b).

There is good reason to prevent management consultants such as Barros from being paid without prior court approval:

To avoid the enormous potential for abuse in the hiring of consultants, appraisers, business advisors, and others who offer their professional services and expertise to beleaguered Chapter 11 debtors, the court should carefully scrutinize applications for employment *before* the trustee or debtor contracts for such services. To hold otherwise could be to invite officious intermeddlers and additional unwarranted and unnecessary financial burdens to an already troubled estate, to the detriment of other creditors and to the benefit of none except those employed by the debtor.

*Carolina Sales*, 45 B.R. at 753 (emphasis in original).

As plaintiffs point out, nothing could better illustrate the wisdom of this policy than the facts in this case. In the six weeks following the filing of the petitions, Barros billed debtors for $60,364.41 in claimed management services, $49,279.81 of which was paid. It charged debtors fees of approximately $2,000.00 per day, all without prior court approval or notice to creditors. As plaintiffs aptly point out, "a bankruptcy estate can be bled dry in short order to the detriment of other creditors and the debtors' efforts to reorganize", should the court allow such activities without surveillance.

Section 549(a) specifically provides for a return to the debtors of the sums paid in postpetition payments. That statute states in pertinent part:

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

\* \* \* \* \* \*

(2)(b) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

Since the $49,279.81 was paid by Northwest (in one instance) and by DOLA (in the

others), Northwest is entitled to partial summary judgment on Counts Four and Five of the Complaint requiring the defendant Barros to return to it the sum of $18,841.67; DOLA is entitled to a partial summary judgment requiring the defendant Barros to return to it the sum of $30,438.14. The court makes no judgment at this point in time whether, in later proceedings defendants Bordlemay, Tuller and Tuller & Co. would also be responsible for return of those funds on any theory asserted or to be asserted by the plaintiffs.

### B. Claims for Preference by Reason of Prepetition Payments

The elements necessary to establish a cause of action for a prepetition preference under 11 U.S.C. § 547 are set out in the statute as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547. All five elements of section 547(b) must be established before a transfer will be avoided. *Thomas Farm Sys., Inc. v. Drive–Kore, Inc. (In re Thomas Farm Sys., Inc.)*, 18 B.R. 541, 542 (Bktcy.E.D.Pa.1982); *Belfance v. BancOhio/Nat'l Bank (In re McCormick)*, 5 B.R. 726, 728 (Bktcy.N.D.Ohio 1980). The absence of any one of the elements constituting a voidable preference negates the trustee's claim. *Yale Express Sys., Inc. v. Budd Leasing Corp. (In re Yale Express Sys., Inc.)*, 11 B.R. 495, 499 (Bktcy.S.D.N.Y.1981).

With respect to at least one of the foregoing elements, defendants have raised a genuine issue of material fact; that is the question of solvency. It is true that the parties seeking to avoid a preferential transfer under section 547 may initially rely on the presumption of insolvency under section 547(f) to establish the third element of a preference. *Ramy Seed Co. v. Habstritt Farms, Inc. (In re Ramy Seed Co.)*, 57 B.R. 425, 427 (Bktcy.D.Minn.1985) (citing 4 *Collier on Bankruptcy*, ¶ 547.52 (L. King 15th ed. 1985)); *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 56 B.R. 339, 370 (Bktcy.D.Minn.1985) (Mahoney, J.), *aff'd on rehearing*, 850 F.2d 1275 (8th Cir. 1988). Under section 547(f) the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of filing of the petition. 11 U.S.C. § 547(f). But, while the presumption shifts the burden of going forward, it does not shift the burden of proof. 4 *Collier on Bankruptcy*, ¶ 547.06 (L. King 15th ed. 1988). The party against whom the presumption operates must come forward with some evidence to rebut the presumption; thus the burden of proof remains on the trustee, as it does with other elements of a preference, to show insolvency at the time of transfer. *Young v. Scandore Paper Box Corp. (In re Lucasa Int'l, Ltd.)*, 13 B.R. 596, 600 (Bktcy.S.D.N.Y.1981).

Defendants have offered proof in the form of financial statements indicating that DOLA was solvent at the time of filing the petition and that Northwest, while insolvent on the date of filing, was solvent in February 1986. It is insolvency at the date of preferential transfer which is important; that would be the time period, April, 1986. The documents that have been provided

minimally reach the level of proof necessary to overcome plaintiff's motion for summary judgment. *See* Bankruptcy Rule 7056(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Foster v. Johns–Manville Sales Corp.*, 787 F.2d 390, 391 (8th Cir.1986). The court does not mean to indicate that these documents will prove defendants' case. They merely appear to raise a genuine issue of material fact.

Since failure in one element of proof would provide a defense, I need not address other arguments made by defendants. Suffice it to say that defendants also argue that there are material issues of fact with respect to other elements of the claim and possible defenses (the discovery on which has not been completed) under section 547(c)(1), (2) and (4).

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for summary judgment on counts four and five is granted with respect to defendant Barros. Plaintiff Northwest shall have judgment declaring the $18,841.67 paid by it to Barros a voidable preference under 11 U.S.C. § 547 and for recovery of $18,841.67 against defendant Barros. Plaintiff DOLA shall have judgment declaring the $30,438.14 paid by it to Barros a voidable preference under 11 U.S.C. § 547 and for recovery of $30,438.14 against defendant Barros.

2. In all other respects, plaintiffs' motion is denied without prejudice to renew at a later time.

LET JUDGMENT BE ENTERED ACCORDINGLY.