**In re PHOENIX STEEL CORPORATION, Debtor.**

**Civ. A. No. 87–147.**

United States Bankruptcy Court, D. Delaware.

Oct. 19, 1989.

Young, Conaway, Stargatt & Taylor by James L. Patton, Jr., Wilmington, Del., for debtor.

Office of U.S. Trustee by Joseph J. Mania, III, Staff Counsel.

HELEN S. BALICK, Bankruptcy Judge.

THE COURT: In July of 1987, the U.S. Trustee moved for an order compelling officers of the debtor to seek retention by court order, for an order reducing officers' salaries and an order directing appointment of an examiner.

The official Creditors Committee and the official Employee and Retiree Creditors Committee along with the debtor, Mellon Bank and NDIDC opposed the request for an examiner, and that request was withdrawn. Each of the interested parties were in agreement that the compensation paid to three named officers should be reviewed, but were in disagreement as to when that review should take place. There was also disagreement as to whether the three individuals—Lifton, Alix, and Ramaekers—were performing services which required their appointment under Section 327(a) of the Code.

Following the filing of numerous memoranda of law and several conferences, the Court on January 25, 1989 entered an order holding that to the extent Lifton, Alix, and Ramaekers are professionals, they are professionals regularly employed under Section 327(b), and directing that a hearing be held to determine reasonableness of their compensation at the time of hearing on final fee applications for the professionals employed under Section 327(a) of the Code. Those hearings were held yesterday.

To lay to rest the issue of "professionals," I will enlarge upon paragraph one of the January 25 order. On November 11, 1986, Lifton, Alix, and Ramaekers were hired by the Phoenix board of directors as officers to evaluate the financial condition of Phoenix in an attempt to save the company. This employment resulted from a contact in October between the board of directors and Lifton and followed an en masse, and virtually without notice, resignation of the top three officers of the company and another managing employee.

Phoenix was facing a working capital crisis. It was out of cash and credit. The steel industry was in a crisis situation. Lifton, Alix, and Ramaekers, after negotiating their salaries, were charged with overseeing the day-to-day operation of a steel mill, investigating whether Phoenix had steel-making possibilities, planning future business strategy, which included redeploying Phoenix's assets in other areas to generate value out of its past losses, if continuation of an operating steel mill was not feasible. They came to that conclusion based upon a steel man's evaluation, Mr. Sambucci.

At the time of the bankruptcy filing on April 20, 1987, approximately five months later, they were performing and continued to perform the management services for which they had been hired.

■ Although each of these men have expertise in financial and management services and have served as professionals under Section 327(a) in other bankruptcy cases, that is not the case here. They were employed as officers of the company on salary to replace resigning officers with the direction from its board of directors to either run that company or utilize its assets for the best interests of the company and interested parties, a charge that obviously called for their expertise as professionals in what has been referred to as "workout specialist." However, it was their job before as well as after bankruptcy. They made the decisions. They did not take orders as to the direction of the company. They acted as officers. The fact they may also be designated as professionals in a particular field is of no consequence. As such, the debtor-in-possession had authority under 11 U.S.C., Section 327(b), to retain their services without obtaining Court approval.

There is a question, however, as to whether Section 330 of the Code applies to those individuals employed under Section 327(b). Section 330 of the Code is not only applicable to those professionals whose employment must be approved by the Court under Section 327(a) or Section 1103(a), but also, to a degree, to those whose employment continues under Section 327(b).

The introductory paragraph of Section 330 speaks to any professional employed under Section 327. It is not restricted to

only those employed under subsection (a), but the term "award" suggests that payment can be made only after notice and hearing on a formal application. That is impractical as to salaried persons; but, it does work in conjunction with other Code provisions requiring disclosure, which gives interested parties the opportunity to bring before the Court the issue of reasonableness of compensation being paid officers during a Chapter 11 case.

■ Moreover, the Court has the authority, if not the duty to *sua sponte* take action. In either case, following notice and hearing, the reasonableness of salaries would be reviewed and awarded or not awarded, as warranted under the particular circumstances of the case.

When one is employed as a salaried individual, it is impractical to require time records. Whatever time it takes to accomplish a particular purpose must be spent, whether it is around the clock or sporadic.

■ Thus, the technical requirements for fee applications is not an appropriate vehicle for determining whether salaries are excessive or reasonable.

The salaries of these three men totaled $15,000 a week, a tidy sum, but reasonable under the circumstances of this case. It is unique. The results are the paramount consideration. It started as a no-asset case in the sense that all assets were secured. It had no working capital. There was distrust with resultant animosity.

Through efforts spearheaded by the management team, there was an eventual turnaround in attitudes of all interested parties, which culminated in a consensual plan under which secured creditors, taxing authorities, administrative claimants received 100 cents on the dollar, totaling approximately $41 million, plus a $3.4 million fund was established for retirees, a payment scheme emerged through a class action settlement, small unsecured creditors received 25 cents on the dollar, and larger creditors received stock in the reorganized Phoenix, one of the leaders in the country utilizing a net operating loss as an investment opportunity.

When results are the paramount consideration, there must be full disclosure as to the amounts of officers' salaries. That obligation was met at the commencement of the case and continued throughout the case. This happened, if not in the filing papers, as early as the lengthy 341 meeting. Thereafter, the amount of salaries was testified to in several fully-noticed hearings during the course of the Chapter 11.

Since retention orders are not required and salaried people do not ordinarily keep time records, written proof of time actually spent is not available for examination. The evidence presented in support of the salaries disclosed that two of the men worked an average of two to three or three to four days a week, and the third, four to five days a week.

In round figures, the replaced officers and related staff would have cost Phoenix approximately $950,000. These three men cost approximately $750,000. Moreover, during approximately two-thirds of the case, this cost was borne by sophisticated secured creditors. For the remaining one-third, their compensation came from the fruits of their labor.

Cost savings is not the only factor. The duties of these officers called into play their expertise as financial and management specialists. The rates of such specialists, if hired by officers of a corporation to perform services at their direction, run from $200 an hour to $5,000 a day. One of the three officers has 25 years experience, another 15 years, and the third, ten years. It can be inferred from those facts that the salaries paid were not excessive.

There has been full and fair disclosure of salaries as well as qualifications and time spent by the officers. The U.S. Trustee is correct in that he has a duty to monitor fees, salaries, and other aspects of a Chapter 11 case. Note, however, must be taken that he does not have a pecuniary interest in the case, and that those who do, the committees and the individual creditors who initially sought review, have not pursued the matter.

**144**

The U.S. Trustee's motion seeking an order of retention and a reduction of salaries must be denied. An order to that effect will be entered today.