**In re BARTLEY LINDSAY COMPANY, Debtor.**

**Bankruptcy No. 4–90–3221.**

United States Bankruptcy Court, D. Minnesota.

Oct. 26, 1990.

Michael B. Fisco, John C. Thomas, Oppenheimer, Wolff & Donnelly, Minneapolis, Minn., for Inter–City.

Robert T. Kugler, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for debtor.

Linda S. Jensen, Mahoney, Walling & Kelley, Minneapolis, Minn., for Unsecured Creditors Committee.

Charles A. Durant, Winthrop & Weinstine, St. Paul, Minn., for Robert F. Stahl, Jr.

Katherine A. Constantine, Dorsey & Whitney, Minneapolis, Minn., for John Neilson.

Richard D. Anderson, Briggs & Morgan, Minneapolis, Minn., for the Bank of New England.

## ORDER REGARDING EMPLOYMENT OF PROFESSIONAL

ROBERT J. KRESSEL, Chief Judge.

This case came on for hearing on the motion of Inter–City Products Corporation. Michael B. Fisco and John C. Thomas appeared for Inter–City; Robert T. Kugler appeared for the debtor; Linda S. Jensen appeared for the Unsecured Creditors' Committee; Charles A. Durant appeared for Robert F. Stahl, Jr.; Katherine A. Constantine appeared for John Neilson; and Richard Anderson appeared for the Bank of New England. Based on the file and the argument of counsel, I make the following:

## MEMORANDUM ORDER

Inter–City challenges on several grounds the arrangement among the debtor, Merrimac Associates, and Stahl. Because Stahl was unable to appear at the scheduled hearing and the debtor refused to agree to a continuance of the hearing, Inter–City subpoenaed Stahl which prompted Stahl to request that his testimony be preserved in deposition form. That was done and Stahl's deposition was received in evidence at the hearing.[1] What follows is a chronology which does not seem to be in dispute.

---

1. The deposition was of limited help since Stahl's attorney constantly objected to questions proposed to Stahl and Stahl, at the direction of his attorney, frequently refused to answer questions. Since Stahl testified only under examination by Inter–City's attorney and did not present any affirmative testimony himself, the record is sparse on Stahl's experience in the reorganization and workout area. I also have limited information on what services Stahl and Merrimac provided to the debtor. Stahl's performance at his deposition certainly did not reflect the cooperation and candor I would expect from the president and chief executive officer of a debtor in possession.

*Factual Background*

On March 29, 1990, Merrimac Associates entered into a contract with BTL Enterprises, Inc. and the debtor whereby Merrimac would provide BTL and the debtor with:

> consulting services and advice concerning the affairs of the Companies, including financial planning, planning and executing corporate goals, public relations, relations with customers, suppliers, bankers and other members of the financial community and such other areas as the Companies shall request and which are reasonably related to the type of advice and assistance rendered by a management consultant.

The agreement goes on to provide that Merrimac is in the business of providing management consulting services and the agreement would not prevent Merrimac from providing such services to others. The term of the agreement began March 29th and was indefinite but with a provision for thirty days notice of termination by either party. Compensation was to be paid by the hour for the time of various employees of Merrimac according to a schedule which was attached to the agreement. The hourly rate for Stahl under the contract was $360.00. The debtor's board of directors approved the agreement at a meeting the next day.[2]

At another joint meeting of the board held on April 12, 1990, Stahl was elected "interim Chief Executive Officer and President" of the debtor. No compensation or other employment terms were mentioned in the minutes of the April 12th meeting.

A document entitled "Amendment to Management Consulting Agreement dated March 29, 1990," and executed April 29, 1990, purports to amend the March 29th consulting agreement. The parties to the amendment are Merrimac, the debtor, and BTL. The only change to the original agreement is item 3 dealing with Merrimac's compensation. The debtor would continue to pay Merrimac hourly rates for most employees of Merrimac, but rather than pay for Stahl's time at an hourly rate,

the amendment provides that the debtor would pay Merrimac $12,000.00 per week for Stahl's time. The agreement also called for the debtor to pay a deposit of $60,000.00. The amendment continues to provide for Merrimac to bill the debtor for the services of Merrimac's employees, including Stahl.

Originally under the consulting contract, checks were paid to Merrimac, but at some unspecified time after Stahl's election as president and chief executive officer, the debtor made checks payable to Stahl who then endorsed them over to Merrimac. Stahl received no other benefits by way of pension, profit sharing, insurance coverage. Additionally, the debtor did not withhold income taxes or FICA from the $12,000.00 check. Whatever income Stahl derived from his work for the debtor was paid to him by Merrimac.

An involuntary chapter 11 petition was filed against the debtor on June 8, 1990. Based on the debtor's consent, an Order for Relief was entered on June 18, 1990.

On June 26, 1990, the debtor filed an application to approve its employment of Merrimac Associates. I denied the application on June 29, 1990, on the grounds that since Stahl was the president and chief executive officer of both the debtor and Merrimac, Merrimac was not a disinterested person eligible for employment by the debtor in possession.

On September 27, 1990, the debtor's Board terminated the contract dated March 29, 1990. While not explicitly stated in the Board resolution, everyone seems to agree that the termination of the contract also terminated Stahl's position as president and chief executive officer of the debtor. The debtor also assumes that under the contract, it is obligated to pay Merrimac $12,000.00 per week for a period of thirty days after termination of the contract.

On October 5, 1990, Inter–City filed this motion, "to compel Robert F. Stahl, Jr. and Merrimac Associates, Inc. to comply with 11 U.S.C. § 327 and other relief." That other relief includes prohibiting the debtor

---

**2.** The minutes of the meeting reflect a joint meeting of the board of BTL Enterprises, Inc., Bartley Lindsay Company, and Top Line, Inc.

The relationship of Top Line, Inc. to the debtor is not clear nor is it exactly clear what liability BTL Enterprises, Inc. has under the agreement.

from paying Stahl or Merrimac until their employment had been approved under § 327 and requiring Stahl and Merrimac to provide an accounting of compensation received from the debtor or any affiliate or insider of the debtor and further for an order to disgorge all such compensation.

The debtor and Stahl both oppose the motion and further requested sanctions under Bankruptcy Rule 9011 against Inter–City's attorney.

At the hearing, the creditors' committee and the Bank of New England supported Inter–City's motion.[3]

### Discussion

While a number of sections are implicated in this motion, the primary ones are § 327(a) & (b) which provide:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

11 U.S.C. § 327(a) & (b).

■ The principle enunciated by § 327(a) requires a debtor to obtain court approval in order to employ a professional person. In addition, under §§ 330 and 331 a professional person may be paid only after making an application for allowance of compensation and having that compensation approved by the court. It is also well accepted that if an entity is a professional person, but does not obtain court approval prior to employment, compensation may be disallowed entirely. A person that is not a professional person may work for a debtor without court approval and may be paid without court allowance without running afoul of §§ 327, 330, and 331. However, it is possible that, under exceptional circumstances, such employment and compensation could run afoul of the general provision in § 363(c)(1) that allows for transactions only in the ordinary course of business, absent notice and a hearing.

■ Two generally accepted principles obtain but are difficult to apply in this case. Financial advisors, workout specialists, and consultants such as Merrimac and Stahl are professionals for the purpose of § 327. *Dola International Corp. v. Bordlemay (In re Dola International Corp.),* 88 B.R. 950 (Bktcy.D.Minn.1988). *In re Seatrain Lines, Inc.,* 13 B.R. 980 (Bktcy.S. D.N.Y.1981). Also, for purposes of §§ 327 and 330, officers and other employees are ordinarily not professional persons and therefore are not subject to the requirements of § 327.[4] *Dola International Corp., supra* at 955.

■ Applying these principles to this case is difficult. Because of Stahl's training and employment as a consultant, a decision needs to be made about who was being

3. I took the motion under advisement. Post-hearing submissions were neither requested nor authorized. However, I received a letter from Stahl's attorney informing me that he would be submitting a supplemental memorandum. Stahl did file a supplemental memorandum as well as an affidavit in an attempt to supplement the record. The process by which Stahl intentionally kept the record sparse at his deposition, but submitted testimony he considered favorable after the hearing without an opportunity for cross-examination can most favorably be characterized as unfair. However, I have considered Stahl's supplemental memorandum and affidavit.

4. I think that this is the proper characterization of the status of officers and employees. Section 327(b) is sometimes cited in support of this proposition, but I think incorrectly. Section 327(b) presupposes that the person is a professional person, but then makes an exception to the court approval requirement. However, I think the organization of § 327, the cases, and the literature all make it clear that officers are ordinarily not professional persons at all.

employed for what purposes, under what arrangement, and under what form. For starters, I would like to state what should be obvious. Form is not determinative. To the extent that Stahl and the debtor argue that the mere fact that Stahl performed his services in the role of president and chief executive officer insulates him from the requirements of § 327(a), I reject that argument. Likewise, to the extent that Inter–City argues that the mere fact that Stahl's main profession is that of a management consultant and workout specialist means that § 327(a) does apply even when Stahl is employed as president and chief executive officer, I equally reject that argument. As is so often true in these circumstances, the rule is not so clear and becomes a question of fact.

▮ What kinds of things are important in deciding whether or not one of the debtor's officers is also a professional person? [5] I think the following are helpful in making such a decision:

(1) What duties are being performed by the individual officer? Is the officer performing traditional executive functions of the office held or is the officer performing services in the way of advice and consulting services for the debtor which is beyond the traditional function of the office held or both?

(2) Is former management still employed by the company or have one or more executives left, leaving a gap in management?

(3) Is the officer, in fact, making those executive decisions traditional of the office held and directing others or are others actually making the decisions based on the advice from the officer?

(4) Is the officer's primary employment the provision of consulting workout or other insolvency services to distressed businesses or is the officer a corporate executive by training and profession?

(5) Is compensation for the officer's services paid directly to the officer or is it paid to another legal entity by which the officer is also employed?

(6) Does the officer receive fringe benefits and other perquisites of the office held consistent with the treatment of other similarly situated and former officers and employees?

(7) Are income and employment taxes withheld from the officer's compensation or is the amount of gross compensation paid to the officer or to some other entity?

(8) Is the compensation of the officer consistent with compensation paid to predecessors and with others employed by the debtor? In other words, is the compensation so large and out of proportion to other compensation being paid by the debtor that such payment would be considered to be outside the ordinary course of the debtor's business?

(9) Has the officer been employed specifically to work through and try and solve the debtor's financial problems or is the employment permanent or intended as indefinite?

(10) Does the officer's employment antedate the commencement of the bankruptcy case or is it contemporaneous with or follow commencement of the bankruptcy case?

(11) Is the officer working full time for the debtor or is the officer allowed to perform services for other business as well? [6]

(12) Is the officer or the officer's firm paid a retainer?

While Stahl's abortive deposition leaves the record empty on a number of these issues, the answer is still clear.

▮ Applying these criteria to this case leads me to clearly conclude that Stahl was acting as a professional person during the

---

5. The question is not whether Stahl was in fact the president and chief executive officer of the debtor. He fairly clearly was. The point of the motion is that it is possible to be both an officer of the debtor and a professional person as that term is used in § 327.

6. I acknowledge that, under these factors, it will be the rare case where a consultant like Stahl is not considered a professional person.

time he worked for the debtor. By profession, Stahl is a workout consultant. While the debtor's Board elected Stahl its president and chief executive officer, it never employed him. The only outstanding contract was between the debtor and Merrimac. The debtor contracted with Merrimac to provide services of a certain type for a certain amount of money. Three changes occurred in that contract after it was initially entered into. First of all, the computation of the fee due Merrimac was changed so that Merrimac received $12,-000.00 per week for Stahl's time, regardless of how much time he actually spent. This was in lieu of the earlier provision in the contract that Merrimac would receive $360.00 for Stahl's time. Secondly, the services provided by Merrimac were changed to include provision of Stahl's services as president and chief executive officer. Thirdly, the debtor paid Merrimac a retainer, something commonly associated with the retention of professionals but not with the employment of employees. The debtor never employed Stahl, it never contracted with Stahl, and it never paid Stahl. Stahl did testify that some weeks after he became president, the debtor made $12,000.00 checks payable to Stahl, which he endorsed over to Merrimac. The facts overwhelmingly indicate that the debtor was paying Merrimac and in exchange, Merrimac provided president and chief executive officer services to the debtor in the person of Stahl. Stahl received no fringe benefits from the debtor. Withholding taxes and Social Security were not withheld from the $12,000.00 payment nor was there any other indication that Stahl was ever employed by the debtor. This was recognized by the debtor itself when the Board decided to terminate its relationship with Stahl. It did not fire him or otherwise relieve him of his duties; rather it terminated its contract with Merrimac.

■ Having said all of this, what is the practical result? Since Merrimac and Stahl are professional persons and their employment was not approved under § 327 or

compensation authorized under §§ 330 and 331, all the compensation paid under the contract to Merrimac, directly or indirectly, after June 18th and possibly after June 8th [7] are avoidable as unauthorized post-petition transfer under § 549(a). The debtor does correctly point out that the ability to avoid such transfers is vested only in the trustee or debtor in possession. Thus, if Merrimac does not voluntarily return the payments it received, actual recovery of the transfer will have to await action by either the debtor in possession or a trustee.

■ None of this is meant to leave Stahl out in the cold, however. Under 11 U.S.C. § 503(b)(1)(A), he is entitled to an administrative expense claim for the reasonable value of the services he provided to the debtor as president and chief executive officer. Obviously, the record is insufficient to make a determination of what that amount would be and, in any case, Stahl has not yet made any such request. Inter–City's request that Stahl and Merrimac be required to comply with § 327(a) is moot as a result of the termination of the debtor of its contract with Merrimac. However, an accounting is certainly in order.

*Rule 9011 Sanctions*

The debtor and Stahl request sanctions against Inter–City's attorney for making this motion. Stahl specifically relies on Bankruptcy Rule 9011. While the debtor does not mention the rule, the language of its request tracks the language of the rule, so I will assume that Rule 9011 is the basis for its request. The rule provides in relevant part:

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, statement of intention, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and tele-

---

7. The applicability of various Bankruptcy Code provisions during the gap period between the filing of an involuntary chapter 11 petition and the order for relief is ambiguous.

phone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation ... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Bankruptcy Rule 9011(a).

■ The bases for the motion are slightly different. Stahl's motion is based on the fact that in an attachment to its motion, Inter–City attached what purported to be minutes of one board meeting but turned out to be parts of minutes of two different meetings combined and according to Stahl, indicates an intention to hide the fact that the board had elected Stahl president and chief executive officer. Stahl also claims that Inter–City made an inaccurate allegation in its motion that the debtor had never sought court approval for Merrimac's employment. Stahl's request misses the mark for several reasons. One, the mix-up on minutes is clearly a clerical mistake and, in any case, it is obvious from Inter–City's motion that it assumed, for the purposes of its motion, that Stahl was the president and chief executive officer of the debtor. So it certainly had no reason to hide the fact that the minutes reflected such an election.

Stahl also argues that the motion was inaccurate when it alleged that the debtor had not applied to approve employment of Merrimac. At the hearing, Inter–City clarified the allegation to indicate that the debtor had never applied to approve Merrimac or Stahl's employment in providing services of a president and chief executive officer. Even if the allegation was simply a mistake, it certainly is not germane and does not rise to the level of a Rule 9011 violation, especially since it is an allegation so easily verified. `.

■ In any case, Stahl misses the point of Rule 9011 which deals not with individual allegations or contents of a motion, but whether or not the motion is well grounded in fact and warranted by existing law or a good faith argument for the extension of existing law. This order should certainly indicate that the motion was well supported in both fact and law. Thus, even if Stahl's allegations in its request for sanctions were correct, they would not provide a bases for sanctions under Rule 9011.[8]

■ The debtor takes a different tack and does not claim that Inter–City's motion was not based in law and fact, but rather that the motion was brought for an improper purpose, *i.e.*, to harass and to increase the cost of litigation to the debtor. It is clear that there has been tension between the debtor and Inter–City since before the case was filed. It was indicated by proceedings in this court, commenced by the debtor, immediately upon the filing of its case and illustrated by some correspondence attached to the debtor's memorandum. Strong demands and counter-demands in situations such as this are not unusual. Certainly, it does not demonstrate an attempt by Inter–City to harass the debtor.

THEREFORE, IT IS ORDERED:

1. 11 U.S.C. §§ 327(a), 330, and 331 apply to the arrangement among the debtor,

---

**8.** Stahl does also mention an earlier "opinion" of mine which established the law on this issue for the district. The opinion turns out to be an unpublished, one page, *ex parte* order dealing with an uncontested application. It's lack of precedential value should be obvious even if it was germane to this motion.

No

Merrimac Associates, Inc., and Robert F. Stahl, Jr.

2. The debtor shall file an accounting of all payments it has made to Merrimac Associates, Inc. or Robert F. Stahl, Jr.

3. Robert F. Stahl, Jr., and Merrimac Associates, Inc. shall provide an accounting of all monies or other compensation received from the debtor.

4. The accountings provided for in paragraphs 2 and 3 shall be filed with the court within ten days of this order and copies provided to the United States Trustee, the debtor, the creditors' committee, Inter–City Products Corporation, and the Bank of New England.

5. Inter–City's motion is otherwise denied.

6. The requests by the debtor and Robert F. Stahl, Jr., to sanction Inter–City Product Corporation's attorney under Bankruptcy Rule 9011 is denied.