## In re BARTLEY LINDSAY COMPANY, Debtor.

### Robert F. STAHL, Jr., Appellant,

### v.

### BARTLEY LINDSAY COMPANY, Inter-City Products Corporation (USA) and Wesley B. Huisinga, U.S. Trustee, Appellees.

Civ. Nos. 3–91–47, 3–91–454.
Bankruptcy No. 4–90–3221.

United States District Court,
D. Minnesota,
Third Division.

Nov. 27, 1991.

Hart Kuller, Charles Durant, Karl Weber, St. Paul, Minn., for Stahl.

John C. Thomas, Michael B. Fisco, Minneapolis, Minn., for Inter–City Products Corp.

## ORDER

RENNER, District Judge.

Before the Court are two appeals from the Bankruptcy Court. Robert F. Stahl, Jr. appeals the Order Regarding Employment of Professional of October 26, 1990 and the Order Allowing Administrative Expense of May 24, 1991. In the first of these Orders, Bankruptcy Judge Robert J. Kressel ruled that Stahl was acting as a professional person whose employment by the Debtor required court approval. *In re Bartley Lindsay Co.*, 120 B.R. 507, 512 (Bankr. D.Minn.1990). In the latter Order, Judge Kressel determined that Stahl was allowed $60,000.00 compensation and $5,064.39 reimbursement of expenses. The Court affirms both decisions.

*Background*

On March 30, 1990, the Bartley Lindsay Company Board of Directors approved a contract between Merrimac Associates, BTL Enterprises, Inc. and Bartley Lindsay Company. The contract stated that Merrimac would provide BTL and the Debtor with management consulting services. The agreement, which did not have a definite term and could apparently be terminated by either party with 30 days notice, indicates that Merrimac is in the business of providing consulting services. With respect to compensation, the Consulting

Agreement provided that BTL and the Debtor agreed to pay for services rendered by Merrimac using an hourly rate. The rate for Mr. Robert Stahl was $360.00.

On April 12, 1990 the Bartley Lindsay Board elected Stahl as President and Chief Executive Officer (CEO). Subsequently, on April 25, 1990 the Debtor executed an amendment to the March 30th Consulting Agreement in which BTL and the Debtor agreed to pay Stahl a flat rate of $12,000 per week. The amendment did not change the billing or payment arrangements; Merrimac continued to bill the Debtor for services of Merrimac's employees, including Stahl. At some unspecified time after Stahl's election to President and CEO the Debtor began making checks directly payable to Stahl. Stahl then endorsed the checks over to Merrimac. Stahl received no other benefits by way of pension, profit sharing, or insurance coverage. The Debtor did not withhold income taxes or FICA from the checks paid to Stahl. It appears that Merrimac deducted the appropriate state and federal taxes before paying Stahl a salary.

An involuntary chapter 11 petition was filed against the Debtor on June 8, 1990. On June 26, 1990 the Debtor filed an application to approve its employment of Merrimac Associates. The bankruptcy court denied the application on June 29, 1990 on the grounds that since Stahl was the President and CEO of both the Debtor and Merrimac, neither Stahl or Merrimac was a disinterested person eligible for employment by the Debtor under 11 U.S.C. § 327.

On September 27, 1990 the Debtor's Board of Directors terminated the March 30, 1990 contract employing Merrimac as a consultant. Although the Board resolution did not explicitly state that the Debtor intended to terminate Stahl from his position as President and CEO, the bankruptcy court found that the facts suggested that this was the Board's intent.

The Debtor continued to compensate Stahl at the rate of $12,000 per week through the end of October 1990, 30 days after Merrimac was terminated as a consultant.

On October 5, 1990, a creditor of the Debtor filed a motion seeking on order requiring Stahl and Merrimac to comply with the Bankruptcy Code section 327 concerning employment of professionals. The bankruptcy court found that Stahl was a professional person whose compensation must be preapproved by the court. *In re Bartley Lindsay Co.*, 120 B.R. 507, 512 (Bankr.D.Minn.1990). As a result of his failing to seek prior approval of his employment, the bankruptcy court held that Stahl was not entitled to compensation for his services. *Id.* at 513. It held that Stahl would be required to file an application for compensation for his services as President and CEO pursuant to section 503(b)(1)(A) of the Bankruptcy Code. *Id.* The court stated that "[u]nder 11 U.S.C. § 503(b)(1)(A) [Stahl] is entitled to an administrative expense claim for the reasonable value of the services he provided to the debtor as President and chief executive officer." *Id.* Stahl appealed this ruling.

On January 30, 1991 Stahl filed an application for allowance of an administrative expense claim under section 503. The application sought compensation for services Stahl rendered between June 18, 1990 and October 31, 1990 totaling $244,346.77, the amount he actually received during this period. The Committee of Creditors filed an objection to the application. On May 22, 1991 the bankruptcy court conducted an evidentiary hearing, and awarded Stahl $60,000 as compensation for his services and $5,064.38 as reimbursement of expenses. However, the court would not allow payment of the compensation until after Stahl and Merrimac returned the $244,346.77 they had previously received. Stahl appealed this decision as well.

*Analysis*

The bankruptcy court's finding of facts are not to be overturned by the District Court unless they are "clearly erroneous." However, the bankruptcy courts conclusions of law are subject to de novo review. *See, e.g.: Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987); *In re Martin*, 761 F.2d 472, 474 (8th Cir.1985); *Grunzke*

*v. Security State Bank of Wells*, 68 B.R. 446, 449 (D.Minn.1987).

### I. Employment of a Professional Person

■ This Court must first determine whether Stahl is a "professional person" under section 327(a) of the Bankruptcy Code, which provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons ... to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a). Section 327(a) requires a debtor in possession, like Bartley Lindsay, to obtain the bankruptcy court's approval prior to employing professional persons. By negative implication, a person that is not a professional person may work for a debtor without prior court approval. The purpose for requiring court approval of professional persons is to "avoid the enormous potential for abuse in the hiring of consultants, appraisers, business advisors, and others who offer their professional services and expertise to beleaguered Chapter 11 debtors...." *Dola Int'l Corp. v. Bordlemany (In re Dola International Corp.)*, 88 B.R. 950, 955 (Bankr.D.Minn. 1988).

To date, the courts have not articulated a consistent definition of "professional persons" nor a consistent methodology for determining whether or not a particular individual or entity should be categorized as such. One court has defined "professional person" as an individual who takes a central role in the administration of the debtor's bankruptcy estate and bankruptcy proceedings, as opposed to one who provides services to the debtor that are necessary regardless of whether a bankruptcy petition was filed. *Matter of D'Lites of America, Inc.*, 108 B.R. 352 (Bankr.N.D.Ga. 1989); *In re Seatrain Lines, Inc.*, 13 B.R. 980 (Bankr.S.D.N.Y.1981); *see also In re Florida Airlines, Inc.*, 110 B.R. 570 (M.D.Fla.1990). Other courts have categorized individuals and entities given broad discretion or autonomy in the administration of the debtor's bankruptcy estate as "professional persons." *In re Rusty Jones, Inc.*, 109 B.R. 838 (Bankr.N.D.Ill. 1989); *In re Fretheim*, 102 B.R. 298 (Bankr.D.Conn.1989).

Employing these factors, most courts have found that the term "professional" includes financial advisors and workout consultants such as Stahl and Merrimac. *In re Neidig Corp.*, 117 B.R. 625 (Bankr. D.Colo.1990); *Matter of Federated Department Stores, Inc.*, 114 B.R. 501 (Bankr. S.D. Ohio 1990); *In re Dola International Corp.*, 88 B.R. 950 (Bankr.D.Minn.1988); *In re American Int'l Airways, Inc.*, 69 B.R. 396 (Bankr.E.D.Pa.1987); *In re Carolina Sales*, 45 B.R. 750 (Bankr.E.D.N.C. 1985); *In re WFDR, Inc.*, 22 B.R. 266 (Bankr.N.D.Ga.1982).

Courts, however, disagree as to whether officers or executives of debtor corporations should be classified as a "professional person" under section 327. A few courts, answering this question affirmatively, have held that the employment of officers by the debtor in possession is subject to prior court approval under section 327(a). *See In re Florida Airlines, Inc.*, 110 B.R. 570 (M.D.Fla.1990); *In re Hooper Goode Realty*, 60 B.R. 328 (Bankr.S.D.Cal.1986). Nonetheless, a majority of the courts have held that continued employment of the debtor corporation's officers does not require prior court approval. *In re Phoenix Steel Corp.*, 110 B.R. 141 (Bankr.D.Del. 1989); *In re Lyon & Reboli, Inc.*, 24 B.R. 152, 154 (Bankr.E.D.N.Y.1982); *In re All Seasons Industries, Inc.*, 121 B.R. 822, 825 (Bankr.N.D.Ind.1990); *In re Midland Capital Corp.*, 82 B.R. 233, 239 (Bankr. S.D.N.Y.1988).

■ The determination of whether a particular person is acting as a professional person is a question of fact. The bankruptcy court concluded that although the Debtor elected Stahl President and CEO it never actually employed him. It found that the Debtor instead contracted with Merrimac which in turn employed and compensated Stahl. The bankruptcy court also reasoned that classifying Stahl as a "professional"

and an "officer" were not mutually exclusive. Judge Kressel stated:

> The question is not whether Stahl was in fact the president and chief executive officer of the debtor. He fairly clearly was. The point of the motion is that it is possible to be both an officer of the debtor and a professional person as that term is used in section 327.

120 B.R. at 512 n. 5. The bankruptcy court concluded that Stahl was a professional person within the meaning of section 327(a) and that the Debtor was therefore required to seek prior court approval for Stahl's employment and compensation. *Id.* at 512–13.

Stahl provided specialized services to the Debtor and acted with relatively unfettered discretion and autonomy in supervising the day-to-day affairs of the business. He made important decisions and was effectively responsible for the operation of the Debtor's company. Despite the fact that Stahl was functioning as President and CEO, it appears that he was never really considered an officer of the Debtor's company. The Debtor paid Merrimac, who in turn paid Stahl. Stahl also was terminated as President and CEO when the Debtor terminated its relationship with Merrimac. Consequently, this Court agrees with the bankruptcy court's characterization of Stahl as a "professional person."

■ Classifying Stahl as a "professional person," however, does not definitively resolve the issue of mandatory court approval under section 327. Section 327(b) provides:

> If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

11 U.S.C. § 327(b). Under this section, a debtor in possession may retain or replace salaried professional persons that the debtor has regularly employed without incurring the burden of obtaining prior court approval. Although this section allows the debtor in possession to circumvent court approval for the retention or replacement of persons that are necessary in the daily operation of the debtor's business, most courts have held that section 327(b) only allows the debtor in possession to forgo prior approval in situations comprising minor transactions in the ordinary course. *In re Park Terrace Townhouses v. Wilds,* 852 F.2d 1019 (7th Cir.1988); *In re Florida Airlines, Inc.,* 110 B.R. 570 (M.D.Fla.1990); *In re Berkeley Multi–Units, Inc.,* 88 B.R. 394 (Bankr.M.D.Fla.1988).

Although Stahl performed services which were previously performed on a regular basis by salaried employees, the Debtor's retention of Stahl as President and CEO and Merrimac as a financial consultant was neither minor nor in the ordinary course of business. Given the extraordinary nature of Stahl's services this Court finds that section 327(b) did not exempt the Debtor from obtaining preapproval of Stahl's compensation from the bankruptcy court.

■ Given that Stahl qualifies as a "professional person" under 327(a) who was not exempt from the prior court approval under section 327(b), all of the compensation paid indirectly to Stahl through Merrimac after June 18th is voidable as an unauthorized post-petition transfer.

## II. Allowance of Administrative Expense

The second appeal raises the issue of whether the bankruptcy court erred in awarding Stahl only $60,000 for his services as President and CEO of the Debtor.

Upon filing an application, the bankruptcy court may award compensation for professional services pursuant to sections 330 and 503(b)(2). Section 330 provides:

> After notice to any parties in interest … and a hearing … the court may award … to a professional person employed under section 327 …
>
> (1) reasonable compensation for actual, necessary services rendered … based on the nature, the extent, and the value of such services, the time spent on such services and the cost of other comparable services …; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a).

■ By its terms, section 330(a) allows a court to award compensation to a professional person only after his or her appointment pursuant to § 327. Court approval is a condition precedent for receiving compensation under section 330. *See In re Fiberglass Specialty Co.,* 12 B.R. 119 (Bankr. D.Minn.1981); *see also In re Garland Corp.,* 8 B.R. 826 (Bankr.D.Mass.1981).

Since Stahl did not obtain court approval of his employment, the bankruptcy court concluded that Stahl was not entitled to compensation as a professional under this provision. This Court agrees with the bankruptcy court's legal conclusion that he is ineligible for compensation under section 330.

■ Notwithstanding Stahl's inability to obtain compensation under section 330, section 503 of the Bankruptcy Code allows an administrative expense claim for certain expenses that are incurred after the debtor petitions for bankruptcy and are "actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A). Based on this provision, the bankruptcy court found that Stahl could only seek compensation for the "actual" and "necessary" services he provided as President and CEO of the Debtor.

In determining what portion of the salary Stahl was paid qualified as "actual and necessary costs of preserving the estate", the bankruptcy court considered the annual salary of the former President and CEO of the Debtor. The Debtor's former President and CEO received compensation totaling between $3,653 and $4,327 per week. It also considered the fact that during Stahl's term as President and CEO the Debtor was a relatively small company employing only approximately 135 people. Finally, the bankruptcy court considered the complexity of work performed by Stahl. According to the record, a majority of Stahl's time was devoted to meetings, litigation matters, formulating a reorganization plan, working with creditors and performing other general and administrative duties.

In light of this evidence the bankruptcy court found that a salary of $4,000 per week fairly compensated Stahl for his services as President and CEO for the period of June 18, 1990 through September 27, 1990. Based on the evidence in the record and the bankruptcy court's factual determinations, this Court finds that bankruptcy court's decision to only award $4000 per week, instead of the over $16,000 per week he actually received, was not clearly erroneous and should be affirmed.

■ Although the bankruptcy adequately considered the service Stahl provided as President and CEO it would be helpful for purposes of review on appeal if the bankruptcy courts clearly explained to what extent they considered the officer's experience in managing and operating financially troubled companies in valuing the services provided. Financial consultants, more than other officers and employees of a corporation, may be employed especially because of their experience with other troubled companies. Moreover, since financial consultants' assignments may only be short term—it is often necessary that they command a premium fee to offset their inability to earn long term financial benefits like ownership incentives and bonuses that are often available to executives with extended tenure. This is especially true when a company, hiring a consultant, is sliding into bankruptcy. If the courts do not explain that they consider and compensate financial consultant's for their expertise, these experienced specialists may be apprehensive about agreeing to assist companies considering bankruptcy. Moreover, detailed explanations of the reasoning supporting the amount of compensation awarded may reduce the frequency of remands.

■ Stahl also challenges the bankruptcy court's decision not to allow him compensation under section 503(b)(1)(A) after his termination of employment on or about September 27, 1990. The bankruptcy court found that Stahl received compensation for the month of October because the consulting agreement with Merrimac provided a

thirty (30) day termination penalty. The bankruptcy court concluded that the compensation Stahl was paid for the month of October was not an "actual and necessary" cost of maintaining the bankruptcy estate. This Court agrees with the bankruptcy court's conclusion that this termination fee did not help preserve the Debtor's estate.

The Court being fully advised, IT IS HEREBY ORDERED that:

1) the Bankruptcy Court's Order Regarding Employment of Professional of October 26, 1990 is AFFIRMED, and

2) the Bankruptcy Court's Order Allowing Administrative Expense of May 24, 1991 is AFFIRMED.